IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TRACY COMPTON                                                                       PLAINTIFF

              v.                    Civil No. 09-3089

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                      DEFENDANT

**MEMORANDUM OPINION**

      Plaintiff, Tracy Compton, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") and supplemental insurance benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**     **Procedural Background:**

      The plaintiff filed her applications for DIB and SSI on August 27, 2007, alleging an onset date of July 21, 2006, due to mood swings and left arm lymphedema.  Tr. 30, 80, 88, 114, 136-137.  Her applications were initially denied and that denial was upheld upon reconsideration.  Tr. 30, 38, 41, 47, 4p.  Plaintiff then made a request for a hearing by an Administrative Law Judge ("ALJ").  An administrative hearing was held on April 13, 2009.  Tr. 5-22.  Plaintiff was present and represented by counsel.

At this time, plaintiff was 33 years of age and possessed a General Equivalence Diploma. Tr. 11, 120. She had past relevant work ("PRW") experience as a poultry plant laborer, a cashier, a cook, a housekeeper, and a waitress. Tr. 36, 115.

On June 2, 2009, the ALJ found that plaintiff's mood disorder and left arm condition stemming from a history of cancer were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 32-33. After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform light work involving occasional overhead reaching with the left arm and frequent grasping and fingering with the left hand. Tr. 33-36. The ALJ also concluded that Plaintiff had moderate restrictions in maintaining social functioning and in concentration, persistence, and pace. Specifically, she was moderately limited in her ability to understand, remember, and carry out detailed instructions; respond appropriately to usual work situations and routine work changes; make decisions on simple work related decisions; and, interact appropriately with supervisors. Plaintiff could perform work where the interpersonal contact was incidental to the work performed, the complexity of the tasks was learned and performed by rote, with few variables and little judgment, and the supervision required was simple, direct, and concrete. With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a hotel maid, sorter, and inspector. Tr. 36-37

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on October 27, 2009. Tr. 1-3. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 7, 8.

## II. <u>**Applicable Law**</u>:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

3

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

Of particular concern to the undersigned is the ALJ's RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's

determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, records indicate that Plaintiff was suffering from bipolar disorder and personality disorder with borderline traits. While we note that the record does not include a vast amount of information concerning Plaintiff's mental treatment and impairments, we do believe additional information is needed before an accurate mental RFC assessment can be established.

Plaintiff's mental health history includes assessments of post traumatic stress disorder ("PTSD") associated with domestic violence; methamphetamine abuse in brief full remission; depression; bipolar disorder; and personality disorder. Tr. 34-35, 159, 164, 180, 219, 269.

On May 18, 2006, Plaintiff was treated by Jillian Guthrie, a licensed clinical social worker with Ozark Guidance Center ("OGC"). Tr. 164-70. When she phoned to schedule her appointment, Plaintiff stated that she had "mental health issues," but refused to provide more specific information. She then refused the first available appointment, which was with Andy Gray, stating that Andy had said he would not see her. Tr. 165. At this time, her problems were noted to include chronic unpredictable mood swings, depression, hypomania, anger, and substance abuse issues. Tr. 165. Ms. Guthrie noted Plaintiff's past history of drug use, domestic violence, and adultery. Tr. 164. She diagnosed Plaintiff with bipolar disorder and amphetamine dependence in early full remission with no intent to return to use, and assessed her with a GAF of 45. Tr. 164. A prior hospitalization at Charter/Vista Health was noted, and Plaintiff reported undergoing three months of counseling and psychiatric services in Oklahoma. Tr. 165.

AO72A
(Rev. 8/82)

On May 9, 2007, Plaintiff was treated at the Green Forest Clinic. Tr. 173. She remained very anxious. It was noted that she had an appointment with a psychiatrist in the near future. Plaintiff was diagnosed with depression, bipolar disorder, schizophrenia, and increased blood pressure. She was prescribed Abilify, Seroquel, and Xanax. Tr. 173.

On June 4, 2007, Plaintiff was evaluated by Dr. Edwin Jones, a staff psychiatrist with OGC. Tr. 159-63. Her symptoms continued to include chronic unpredictable mood swings, depression, hypomania, and anger that negatively impacted her daily life. He diagnosed her with bipolar II disorder and amphetamine dependence in early full remission with no intent to return to use. Tr. 159. Dr. Jones also assessed Plaintiff with a global assessment of functioning ("GAF") score of 45. He noted that she had limited financial resources. Tr. 159, 162.

On February 19, 2008, Plaintiff underwent a mental diagnostic evaluation with Dr. Terry Efird. Tr. 216-221. When asked why she was disabled, Plaintiff reported racing thoughts, difficulty finding herself, difficulty holding down a job, problems with concentration, mood fluctuations, decreased interest in activities, depression, self destructive behavior, manic episodes, and difficulty lifting her left arm due to a history of breast cancer. She admitted to a history of methamphetamine abuse, inpatient psychiatric treatment at age 18 due to suicide threats, imprisonment for theft of property and burglary associated with her drug use, and outpatient treatment in 2004 for approximately three to five months. In 2007, Plaintiff also had one visit at OGC. Plaintiff was prescribed Abilify, Alprazolam, and Seroquel, but admitted that she did not always take them as prescribed. She indicated that she had stopped taking the Seroquel in June 2007 because she could no longer afford it. Tr. 216-221.

AO72A
(Rev. 8/82)

Dr. Efird's exam revealed an anxious mood, an appropriate affect, unremarkable speech, and logical, linear and goal directed thoughts. Tr. 216-221. He diagnosed Plaintiff with bipolar disorder, PTSD, depression, and personality disorder. Dr. Efird also assessed her with a GAF score of 47-57. He noted that she put forth adequate effort, but also concluded that she exaggerated the severity of her reported symptomology. Tr. 216-221.

On March 13, 2008, Plaintiff underwent a general physical exam with Dr. Shannon Brownfield. Tr. 243-248. She reported a history of mastectomy in 2002 with residual pain and swelling in her left arm and bipolar disorder. Plaintiff indicated that she had been prescribed Seroquel, Abilify and Xanax, but could not afford them. She also reported a history of inpatient mental health treatment at age 18, due to suicidal ideation. Plaintiff stated that she often hit herself when she was upset. An examination was normal, except for revealing weakness in her left arm with pain and a 75% normal grip strength in her left hand. Dr. Brownfield concluded that Plaintiff would have moderate limitations in her left arm and moderate to severe mental limitations due to bipolar disorder. Tr. 243-248.

On February 19, 2009, Plaintiff had an appointment with an Advanced Practical Nurse, Mary Ann Adams, at OGC. Tr. 269-270. She noted that Plaintiff's moods remained erratic on Cymbalta. Plaintiff also stated that she had hit herself in the head with a glass bottle and had stopped her medications. To Ms. Adams, this indicated that Plaintiff might have more bipolar tendencies than originally thought. Further evaluation revealed depression with mood swings, hypomanic episodes with no classic mania symptoms, tearfulness, anxiety, difficulty sleeping, and occasional panic attacks. She exhibited logical thoughts and good memory. No suicidal ideation or psychotic symptoms were noted. Ms. Adams diagnosed Plaintiff with bipolar II

AO72A
(Rev. 8/82)

disorder and rule out bipolar I disorder. She prescribed Stavzo and Restoril, advised her to discontinue the Cymbalta and Trazadone, and recommended she continue the Xanax. Tr. 262-270.

We note that the only true mental RFC assessment contained in the file was completed by a non-examining, consultative psychologist. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). Although Dr. Efird examined Plaintiff, we can find no evidence to show that he completed a mental RFC assessment. The evidence indicates that both doctors to examine Plaintiff gave her a GAF score indicative of serious to moderate symptoms. Given her diagnoses, we believe that an RFC assessment should have been obtained from a treating doctor.

We also find that Ms. Adams' comment that a full psychological evaluation was needed and the ALJ's admission that he did not know what this meant, indicates that remand is necessary to allow the ALJ to develop the record further concerning Plaintiff's mental RFC. Accordingly, on remand, the ALJ is directed to obtain an RFC assessment from Dr. Efird and from Plaintiff's treating doctors and therapists at OGC. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (holding ALJ is required to seek additional clarifying statements from a treating physician when a crucial issue is undeveloped or underdeveloped).

We note that the ALJ dismissed plaintiff's subjective complaints, stating that plaintiff had failed to follow medical advice and take her medication as prescribed. (Tr. 347, 350). While we do agree that the record reveals periods during which plaintiff did not take her medication, we are also aware of the fact that it is not uncommon for patients suffering from bipolar disorder

to discontinue their medications at will. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISRODERS-IV-TR 359 (4th ed. 2000); Charolette E. Grayson, *Bipolar Disorder: Taking Your Bipolar Medication*, *at* www.webmd.com; Agnes Hatfield, *Medication Non-Compliance*, *at* www.schizophrenia.com. According to the DSM, patients suffering from bipolar disorder also suffer from anosognosia, or poor insight. *See* DSM IV-TR at 359. "Evidence suggests that poor insight is a manifestation of the illness, rather than a coping strategy. . . . This symptom predisposes the individual to noncompliance with treatment and has been found to be predictive of higher relapse rates, increased number of involuntary hospital admissions, poorer psychosocial functioning, and a poorer course of illness." *Id*. As such, we believe that the ALJ should have taken this into consideration prior to rendering his opinion. Because the ALJ failed to do so in this case, we cannot say that substantial evidence supports the ALJ's dismissal of plaintiff's subjective complaints on the basis of plaintiff's failure to take her medication as prescribed. Accordingly, on remand, the ALJ should question plaintiff's treating physicians regarding the cause of plaintiff's failure to take her medication and the effect, if any, it has on her condition.

The evidence also indicates that Plaintiff was experiencing financial difficulties and was obtaining sample medications from OGC. On various occasions, she reported not being able to obtain her medications because she could not afford them. The ALJ, however, did not properly address this issue. Therefore, on remand, the ALJ should also consider Plaintiff's financial constraints. *See Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir. 1984) (holding that a lack of sufficient financial resources to follow prescribed treatment to remedy a disabling impairment may be an independent basis for finding justifiable cause for noncompliance.).

9

**IV.     Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 16th day of February 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE